IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD LEE JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:19-cv-2588-D-BN |
| | § | |
| SEAGOVILLE POLICE DEPARTMENT, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Richard Lee Johnson filed this *pro se* action alleging constitutional violations related to an arrest in 2018 by the Seagoville Police Department (the Department). *See* Dkt. No. 3. And Senior United States District Judge Sidney A. Fitzwater referred Johnson's case to the undersigned United States magistrate judge for screening under 28 U.S.C. § 636(b) and a standing order of reference.

The Court granted Johnson leave to proceed *in forma pauperis* (IFP) under the Prison Litigation Reform Act (the PLRA). *See* Dkt. No. 8. And, after reviewing Johnson's verified responses to a screening questionnaire, *see* Dkt. Nos. 9 & 11, to further advance the pre-service screening of Johnson's claims under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and to potentially identify the officers who should be named as defendants, the Court ordered the Department to undertake a review of the subject matter Johnson sets out to ascertain the facts and circumstances, to gather the arrest and any jail and medical records relevant to his claims, and to compile a written report, including copies of pertinent rules, regulations, witness statements, and

official medical and jail records, *see* Dkt. No. 13 (citing *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *Cowart v. Dallas Cnty. Jail*, 439 F. App'x 332, 333 (5th Cir. 2011) (per curiam)).

The Department filed its *Martinez* report. *See* Dkt. No. 18. Johnson responded. *See* Dkt. No. 21. And, as ordered, the Department manually filed video recordings, serving those recordings on Johnson. *See* Dkt. Nos. 29, 30, & 31.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should dismiss with prejudice all claims made by Johnson except his claim of excessive force as made against two (at least then) Seagoville police officers and order, just as to this claim, that Johnson's complaint as amended be served on these defendants.

## Legal Standards

Under the PLRA, where a prisoner – whether he is incarcerated or detained pending trial – seeks relief from a governmental entity or employee, a district court must, on initial screening, identify cognizable claims or dismiss the complaint, or any portion of the complaint, that "is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1).

The fails-to-state-a-claim language of this statute (as well as its sister statute, Section 1915(e)(2)(B)) "tracks the language of Federal Rule of Civil Procedure 12(b)(6)." *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) (per curiam).

And "[i]t is well-established that a district court may dismiss a complaint on its own motion under [Rule] 12(b)(6) for failure to state a claim upon which relief may

granted." *Starrett v. U.S. Dep't of Defense*, No. 3:18-cv-2851-M-BH, 2018 WL 6069969, at *1 (N.D. Tex. Oct. 30, 2018) (citing *Carroll v. Fort James Corp.*, 470 F.3d 1171 (5th Cir. 2006) (citing, in turn, *Shawnee Int'l, N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984))), *rec. accepted*, 2018 WL 6068991 (N.D. Tex. Nov. 20, 2018), *aff'd*, 763 F. App'x 383 (5th Cir.) (per curiam), *cert. denied*, 140 S. Ct. 142 (2019).

A district court may exercise its "inherent authority ... to dismiss a complaint on its own motion ... 'as long as the procedure employed is fair.'" *Gaffney v. State Farm Fire & Cas. Co.*, 294 F. App'x 975, 977 (5th Cir. 2008) (per curiam) (quoting *Carroll*, 470 F.3d at 1177 (quoting, in turn, *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)); citation omitted). The United States Court of Appeals for Fifth Circuit has "suggested that fairness in this context requires both notice of the court's intention to dismiss *sua sponte* and an opportunity to respond." *Id.* (quoting *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 643 (5th Cir. 2007) (quoting, in turn, *Carroll*, 470 F.3d at 1177); internal quotation marks and brackets omitted). These findings, conclusions, and recommendations provides notice, and the period for filing objections to them affords an opportunity to respond. *See, e.g.*, *Starrett*, 2018 WL 6069969, at *2 (citations omitted)).

Dismissal for failure to state a claim under either Section 1915A(b)(1), Section 1915(e)(2)(B)(ii), or Rule 12(b)(6) "turns on the sufficiency of the '*factual* allegations' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam)), as neither the PLRA, the IFP statute, nor the Federal Rules of Civil

Procedure "countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 574 U.S. at 11.

Instead, plaintiffs need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Id.* at 12 (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* And "[a] claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."))).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not

contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*

This rationale has even more force here, as the Court "must construe the pleadings of *pro se* litigants liberally," *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), "to prevent the loss of rights due to inartful expression," *Marshall v. Eadison*, 704CV123HL, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)). But "liberal construction does not require that the Court ... create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

In sum, "*[p]ro se* complaints receive a 'liberal construction.' Even so, 'mere conclusory allegations on a critical issue are insufficient....'" *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538

(5th Cir. 2018), then *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam)).

And, "[o]rdinarily, 'a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed.'" *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (quoting *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009)). But leave to amend is not required where an amendment would be futile, *i.e.,* "an amended complaint would still 'fail to survive a Rule 12(b)(6) motion," *Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)), or where a plaintiff has already amended his claims, *see Nixon v. Abbott*, 589 F. App'x 279, 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a *pro se* litigant to develop the factual basis for his complaint." (citation omitted)).

A *Martinez* report – like an evidentiary hearing held under *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) – is "a tool" to be used to further develop the factual basis of an *in forma pauperis* or prisoner complaint, to determine whether *sua sponte* dismissal is appropriate. *Wiley v. Thompson*, 234 F. App'x 180, 182 (5th Cir. 2007) (per curiam) (recognizing that the Fifth Circuit has "adopted the *Martinez* report as a tool" and citing *Cay v. Estelle*, 789 F.2d 318, 323 n.4, 324 (5th Cir. 1986) ("Regardless of the means used to develop the factual basis of a claim, dismissal under [either 28 U.S.C. § 1915(e) or § 1915A] is appropriate whenever it becomes clear that

an IFP [or prisoner] complaint is without merit."), *overruled on other grounds by Denton v. Hernandez*, 504 U.S. 25 (1992)); *accord Hamer v. Jones*, 364 F. App'x 119, 122 n.2 (5th Cir. 2010) (per curiam) ("This court has adopted the procedures used in *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), as a tool by which an administrative record is constructed to assist in assessing prisoner litigation under 28 U.S.C. § 1915." (citing *Norton v. Dimazana*, 122 F.3d 286, 292-93 (5th Cir. 1997))).

But information provided through "[a] *Martinez* report may not be used to resolve material disputed fact findings when they are in conflict with the pleadings or affidavits." *Newby v. Quarterman*, 325 F. App'x 345, 354 (5th Cir. 2009) (per curiam) (citing *Shabazz v. Askins*, 980 F.2d 1333, 1334-35 (10th Cir. 1992)); *accord Cardona v. Taylor*, 828 F. App'x 198, 201 (5th Cir. 2020) (per curiam) (collecting cases).

"'A bona fide factual dispute exists even when the plaintiff's factual allegations that are in conflict with the *Martinez* report are less specific or well-documented than those contained in the report.'" *Shabazz*, 980 F.2d at 1334-35 (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991)). "A plausible factual allegation, even if it lacks evidentiary support, is not 'frivolous' as contemplated by § [1915(e)], even though it may not survive a motion for summary judgment." *Hall*, 935 F.2d at 1109. And, "[b]ecause pro se litigants may be unfamiliar with the requirements to sustain a cause of action, they should be provided an opportunity to controvert the facts set out in the *Martinez* report." *Id.*[1]

---

[1] *See also Bailey v. Vincent*, 694 F. App'x 283, 284 (5th Cir. 2017) (per curiam)

**Analysis**

Johnson's civil claims stem from his May 29, 2018 by Seagoville police officers, during which he alleges he was "repeatedly tased by officers while on the ground and in handcuffs," which incident resulted in his teeth being broken. Dkt. No. 3 at 1. Johnson has amended his allegations through verified responses to the Court's screening questionnaire to clarify that his sole claim is for excessive force. *See* Dkt. No. 11 at 4 (further alleging: "I had two teeth broken when several officers slammed me on the ground. I was repeatedly tased while in handcuffs on the ground that has led to mental and emotional problems…. I was immediately aware of the pain. Paramedics on the scene removed the taser prongs in the back of a marked police cruiser, and later came to the Seagoville jail because of broken teeth."); *id.* at 6 ("I was slammed on the ground and physically assaulted by numerous officers resulting in broken teeth. I was repeatedly tased while in handcuffs on the ground while no threat of anything was possible."); *see also id.* at 5 (seeking $1 million in damages, an

---

("[A]lthough the State raised affirmative defenses in its *Martinez* report, Bailey has shown no error in the district court's reliance on the report, which was otherwise proper under the circumstances." (citing *Parker v. Carpenter*, 978 F.2d 190, 191 n.2 (5th Cir. 1992) (approving the Tenth Circuit's *Martinez v. Aaron* procedures as a means "to enable the trial court to make a determination of frivolity" (cleaned up)))); *Ruiz v. Mercado*, Civ. A. No. M-14-1921, 2016 WL 1166040, at *2 (S.D. Tex. Feb. 10, 2016) ("A court may base a dismissal under 28 U.S.C. § 1915(e) 'on medical or other prison records if they are adequately identified and authenticated,' such as those included in a *Martinez* report, and medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. However, 'a *Martinez* report may not be used to resolve material disputed fact findings when they are in conflict with the pleadings or affidavits.'" (citations omitted)), *rec. adopted*, 2016 WL 1162264 (S.D. Tex. Mar. 23, 2016).

investigation, retraining, and that his teeth be repaired).

A claim "that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard …." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *accord Garza v. Briones*, 943 F.3d 740, 744 (5th Cir. 2019) ("Excessive-force claims are 'governed by the Fourth Amendment's "reasonableness" standard.'" (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014))).

To ultimately "prevail on a Section 1983 excessive force claim, 'a plaintiff must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Shepherd v. Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019) (quoting *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014) (quoting, in turn, *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008)); citing *Graham*, 490 U.S. at 393-97)).

> Accidental contact between an officer and a civilian is not a Fourth Amendment seizure – even if it injures the civilian – so a § 1983 plaintiff claiming excessive force must show that force was applied intentionally. *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989) (explaining that a seizure occurs only when a suspect's "freedom of movement" is terminated "through means intentionally applied" by the governmental actor); *Gorman v. Sharp*, 892 F.3d 172, 175 (5th Cir. 2018) (holding there can be no § 1983 liability for excessive force "in the absence of intentional conduct"). And even if the seizure involves intentional conduct, the district court must consider whether it was unreasonable under the specific circumstances of the seizure. *See, e.g.*, *City of Escondido v. Emmons*, 139 S. Ct. 500, 503-04 (2019) (per curiam) (reversing the denial of qualified immunity where officers threw a man to the ground during an arrest).

*McDonald v. McClelland*, 779 F. App'x 222, 225-26 (5th Cir. 2019) (per curiam).

> In excessive-force claims under the Fourth Amendment, the reasonableness of an official's conduct depends on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The court must adopt "the perspective of a reasonable officer on the scene, rather than [judge] with the 20/20 vision of hindsight." *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97. "As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

*Brothers v. Zoss*, 837 F.3d 513, 518-19 (5th Cir. 2016) (footnote omitted).

In sum, "'[e]xcessive force claims are necessarily fact-intensive': What is excessive in one case may be permissible in another." *Garza*, 943 F.3d at 745 (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam)). But, at least for now, the Court's consideration of the facts surrounding the use of force by officers on May 29, 2018 that Johnson alleges was excessive is limited to his verified non-conclusory allegations.

That is, the verified dash-cam and body-cam videos depicting Johnson's arrest, provided through the *Martinez* report, *see* Dkt. Nos. 18, 18-11, & 30, may ultimately show that the Seagoville police officers acted objectively reasonable under the circumstances (and/or show that each officer is entitled to qualified immunity), *see* Dkt. No. 18 at 3 ("While Plaintiff alleges that he was 'repeatedly tased by officers while on the ground and in handcuffs' and that his 'teeth were also broken,' the bodycam and dashcam videos of the two officers involved clearly show that is not the

case. While the officers did have to use a taser in order to gain compliance, the taser was used only once, not repeatedly, while Plaintiff was resisting and prior to Plaintiff being placed in restraints. The taser was never used while Plaintiff was in handcuffs. Further, Plaintiff never complains about his teeth hurting much less being broken in any of the videos at the scene or during book-in at the jail."); *cf. Hutcheson v. Dallas Cnty., Tex.*, No. 3:17-cv-2021-BN, 2020 WL 1692950, at *9 (N.D. Tex. Apr. 7, 2020) (observing that "considering the nominal affirmative defense [of qualified immunity] in [the] posture [of a motion to dismiss] is difficult if ... the record reflects that a video of the use-of-force incident exists because, to the extent that the video '"discredits [Plaintiffs'] description of facts, a court will[ – at least by the summary-judgment stage – ]consider the facts in the light depicted by the videotape'" (quoting *Shepherd*, 920 F.3d at 283 (quoting, in turn, *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)); citing *Scott v. Harris*, 550 U.S. 372, 381 (2007); citation omitted)), *aff'd*, ___ F.3d ___, No. 20-10383, 2021 WL 1344002 (5th Cir. Apr. 12, 2021).

But the Court may not consider the use of force as depicted by video recordings insofar as the videos conflict with Johnson's non-conclusory description of the force used against him. *See* Dkt. No. 3 at 1; Dkt. No. 11 at 6 (alleging that he was "repeatedly tased" while he was already in handcuffs and on the ground); *see, e.g.*, *Cardona*, 828 F. App'x at 200-01 ("After reviewing the [*Martinez*] report, which included a video recording of the incident, the court dismissed Cardona's claims for failure to state a claim.... [But] we have stated, on numerous occasions, that information from a *Martinez* report may not be used to resolve material disputed facts

when the information conflicts with the plaintiff's pleadings." (citing *Hamer v. Jones*, 364 F. App'x 119, 123 (5th Cir. 2010) (per curiam) ("The district court's conclusions as to the extent of Hamer's injuries appear to adopt the information in the *Martinez* report, specifically video evidence gathered at the time of the incident, rather than simply accepting Hamer's allegations. We have previously noted that a *Martinez* report may not be used to resolve material disputed facts when the report is in conflict with the pleadings or affidavits. Nonetheless, we need not reach this issue. Even if the district court improperly characterized Hamer's injuries, its ultimate ruling assumed *in arguendo* that any injuries Hamer sustained met the Eighth Amendment requirements." (citation omitted)); other citations omitted)).

The Court should therefore allow to proceed and serve Johnson's complaint as amended insofar as he has alleged a plausible excessive force claim against the Seagoville police officers involved in his May 29, 2018 arrest: Officer S. Forrest and Officer J. Keahey.

But, to the extent that Johnson has also alleged a cause of action based on deliberate indifference, that claim, based on the facts included in Johnson's amended allegations, *see* Dkt. No. 11 at 7 ("At the jail I complained about the pain from my teeth being broken and paramedics came. The sergeant in the jail refused me pain meds and the paramedics said they couldn't help my teeth."), should be dismissed with prejudice for failure to state a claim.

> The [Constitution] requires prison officials to provide "humane conditions of confinement" with due regard for inmate health and safety. *Farmer v. Brennan*, 511 U.S. 825, 832, 837 (1994). To show a violation, inmates must prove that they were exposed "to a substantial risk of

> serious harm" and "that prison officials acted or failed to act with deliberate indifference to that risk." *Carlucci*, 884 F.3d at 538 (quoting *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). The presence of a substantial risk is an objective inquiry. *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019). Deliberate indifference, however, is subjective; it requires a showing that prison officials had actual knowledge of a risk and disregarded it. *Id.* Knowledge may be inferred from the circumstances, particularly where the risk is obvious. *Hope v. Pelzer*, 536 U.S. 730, 738 (2002).

*Valentine v. Collier*, 978 F.3d 154, 162-63 (5th Cir. 2020) (citation modified); see also *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019) (observing that the Fifth Circuit "has based its Fourteenth Amendment case law concerning pretrial detainees on the [United States] Supreme Court's Eighth Amendment precedent concerning prisoners" (citations omitted)).

"Deliberate indifference is an extremely high standard to meet." *Domino v. TDCJ*, 239 F.3d 752, 756 (5th Cir. 2001). And, to survive screening, Johnson must allege facts that show, or from which the Court may infer, "'that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Valentine*, 978 F.3d at 163 (quoting *Gobert*, 463 F.3d at 346); see also *Young v. McCain*, 760 F. App'x 251, 257 (5th Cir. 2019) (per curiam) ("To establish an Eighth Amendment violation, the prisoner must demonstrate that the conditions of his confinement were 'so serious as to deprive prisoners of the minimal ... measure of life's necessities, as when it denies the prisoner some basic human need,' and further, that the responsible prison officials acted with deliberate indifference to the prisoner's health or safety." (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995))).

Johnson's thin factual claims fail to plausibly allege that officials at the jail were deliberately indifferent to his medical care, particularly considering his seemingly contradictory allegation that the paramedics who removed the taser prongs from him "later came to the Seagoville jail because of [his] broken teeth." Dkt. No. 11 at 4. So he has not alleged that he was refused treatment or that his complaints were ignored. He has alleged the opposite.

## Recommendation

The Court should dismiss with prejudice all claims made by Plaintiff Richard Lee Johnson except his claim of excessive force as made against two (at least then) Seagoville police officers – Officer S. Forrest and Officer J. Keahey – and order, just as to the claim of excessive force, that Johnson's complaint as amended be served on these defendants.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 22, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE