IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD LEE JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:19-cv-2588-D-BN |
| | § | |
| OFFICER JUSTIN KEAHEY and | § | |
| OFFICER STEVEN FORREST, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

On the evening of May 27, 2018, Plaintiff Richard Lee Johnson, exceeding the speed limit by 13 miles per hour, was pulled over by a Seagoville police officer. Based on Johnson's not having a driver's license and his demeanor, the officer, believing something was off, requested backup. After a second officer arrived, the first asked Johnson to exit his vehicle. Johnson verbally resisted, argued with the officers, but eventually did exit the vehicle. A brief scuffle ensued, and Johnson was tased.

Johnson filed this *pro se* action alleging constitutional violations based on the encounter. *See* Dkt. No. 3.

After screening Johnson's allegations, the Court dismissed with prejudice all claims he made except for excessive force as against the two police officers (the Excessive Force Claim) and determined that the Excessive Force Claim should be served. *See* Dkt. Nos. 32, 36. Senior United States District Judge Sidney A. Fitzwater then referred this case to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b). And the Court ordered that the Excessive

Force Claim be served on the two officers identified through the screening process. *See* Dkt. No. 37.

Defendants Officer Justin Keahey and Officer Steven Forrest answered. *See* Dkt. Nos. 44, 45. Both asserted qualified immunity. *See* Dkt. No. 44 at 4, ¶¶ 4, 10; Dkt. No. 45 at 4, ¶¶ 4, 10. Keahey and Forrest then filed a court-ordered motion for summary judgment as to the assertions of qualified immunity. *See* Dkt. Nos. 46, 49-52. The Court allowed Johnson to file a motion for leave to conduct limited discovery in order to respond to qualified immunity. *See* Dkt. No. 53. He did. *See* Dkt. No. 54. And Keahey and Forrest responded to oppose leave. *See* Dkt. No. 58.

After the Court denied Johnson leave to conduct targeted discovery, it set a deadline for him to respond to the summary judgment motion. *See* Dkt. No. 59. The Court then granted Johnson's motion to extend that deadline. *See* Dkt. Nos. 63, 64. But he never responded.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should grant the motion for summary judgment as to qualified immunity and dismiss this lawsuit with prejudice.

### Legal Standards

"A plaintiff makes out a [42 U.S.C.] § 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law,'" *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (cleaned up; quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)).

"But government officials performing discretionary duties" can respond to such

a claim by asserting qualified immunity. *Id.* at 294 (citing *Haverda v. Hays Cnty.*, 723 F.3d 586, 598 (5th Cir. 2013)).

If they do, a court must consider each official's actions separately, *see Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007), on an expedited basis, *see Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (per curiam) ("Because qualified immunity is an *immunity from suit*, not merely a defense to liability, 'it is effectively lost if a case is erroneously permitted to go to trial.' It is for this reason that a denial of qualified immunity is immediately appealable and that a defendant's entitlement to qualified immunity should be determined at the earliest possible stage of the litigation. This scheme prevents a defendant entitled to immunity from being compelled to bear the costs of discovery and other pre-trial burdens." (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); citations omitted)).[1]

> [T]he doctrine of qualified immunity attempts to balance two competing societal interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." These interests are distilled into a legal standard, an affirmative defense, that shields public officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020) (quoting *Pearson v. Callahan*,

---

[1] *See also Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) ("[B]ecause qualified immunity is 'not simply immunity from monetary liability' but also 'immunity from having to stand trial,' there is an interest in qualified immunity entering a lawsuit 'at the earliest possible stage of litigation.'" (quoting *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (quoting, in turn, *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989)))).

555 U.S. 223, 231 (2009), then *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Phrased differently, this immunity "attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)).

The doctrine therefore "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011); internal quotation marks omitted); *accord City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015. "'Accordingly, "qualified immunity represents the norm," and courts should deny a defendant immunity only in rare circumstances.'" *Angulo v. Brown*, 978 F.3d 942, 949 (5th Cir. 2020) (quoting *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (quoting, in turn, *Harlow*, 457 U.S. at 807)); *but see, e.g.*, *Jamison v. McClendon*, 476 F. Supp. 3d 386 (S.D. Miss. 2020) (calling for reconsideration of the doctrine); *Hoggard v. Rhodes*, 141 S. Ct. 2421, 2422 (2021) (Thomas, J., statement respecting denial of cert.) (calling on his colleagues to, "in an appropriate case" "reconsider either our one-size-fits-all test or the judicial doctrine of qualified immunity more generally").

The "qualified-immunity inquiry is two-pronged." *Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020) (citing *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020)).

- Do "the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right"? *Id.* at 190-91 (citing *Garcia*, 957 F.3d at 600)

- Was "the right at issue [] 'clearly established' at the time of the alleged misconduct"? *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (cleaned up; quoting *Pearson*, 555 U.S. at 232).

"In order for a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Ramirez*, 3 F.4th at 133 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The reasonableness of the official's conduct and the degree to which the particular right in question was clearly established are thus merged into one issue for purposes of the qualified immunity analysis." *Id.* at 133-34; *cf. Nerio v. Evans*, 974 F.3d 571, 575 (5th Cir. 2020) ("Fair notice requires clearly established law. That is, the law must 'clearly prohibit the officer's conduct in the particular circumstances before him' so 'every reasonable official' knows not to engage in that conduct." (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018); citing *al-Kidd*, 563 U.S. at 742)).

Under this standard, "'[q]ualified immunity is justified unless no reasonable officer could have acted as [the defendant officers] did here, or every reasonable officer faced with the same facts would not have [acted as the defendant officers did].'" *Tucker v. City of Shreveport*, 998 F.3d 165, 174 (5th Cir. 2021) (quoting *Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019) (citing, in turn, *Wesby*, 138 S. Ct. at 590 ("It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that 'every reasonable official' would know."))).

A court may "'analyze the prongs in either order or resolve the case on a single prong.'" *Cunningham*, 983 F.3d at 191 (quoting *Garcia*, 957 F.3d at 600). But addressing this affirmative defense on a motion for summary judgment is not exactly intuitive.

"A plaintiff suing for a constitutional violation has the ultimate burden to show that the defendant violated a constitutional right … whether or not qualified immunity is involved." *Joseph*, 981 F.3d at 329 (footnote omitted).

But, "[w]hen a public official makes 'a good-faith assertion of qualified immunity,' that 'alters the usual summary-judgment burden of proof, shifting it to the plaintiff to show that the defense is not available.'" *Id.* at 329-30 (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016)); *accord Batyukova v. Doege*, 994 F.3d 717, 724 (5th Cir. 2021) ("The defense of qualified immunity 'alters the usual summary judgment burden of proof.' Once a defendant properly raises the defense, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to the defense's protection." (citations omitted)). "In other words, to shift the burden to the plaintiff, the public official need not show (as other summary-judgment movants must) an absence of genuine disputes of material fact and entitlement to judgment as a matter of law." *Joseph*, 981 F.3d at 330 (citing *King v. Handorf*, 821 F.3d 650, 653-54 (5th Cir. 2016)).

Once shifted, "the plaintiff bears the burden of demonstrating that a defendant is not entitled to qualified immunity." *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019) (per curiam) (citation omitted). And, "[t]o rebut [a public official's]

qualified immunity defense, a plaintiff must point to summary judgment evidence '(1) that [the official] violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was 'clearly established at the time.'" *Cloud v. Stone*, 993 F.3d 379, 383 (5th Cir. 2021) (cleaned up).

As to the first prong of the qualified-immunity inquiry, to overcome a public official's motion for summary judgment on qualified immunity, the plaintiff "must show that there is a genuine dispute of material fact and that a jury could return a verdict entitling the plaintiff to relief for a constitutional injury" – just as would be required "if the plaintiff did not face qualified immunity." *Joseph*, 981 F.3d at 330. That is, the plaintiff must defeat summary judgment by showing that "the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right," *Cunningham*, 983 F.3d at 190-91.

When considering this showing, the Court must "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). But the Court need not do so if the plaintiff's "version 'is blatantly contradicted by the record, so that no reasonable jury could believe it.'" *Joseph*, 981 F.3d at 325 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007); citing *Orr*, 844 F.3d at 590).

When accepting the plaintiff's well-supported version of the disputed facts, the Court must "view the facts and draw reasonable inferences in the light most favorable to" the plaintiff. *Id.* (footnote omitted). And, particularly applicable in *pro se* cases, "verified complaint[s] and other verified pleadings serve as competent summary

judgment evidence." *Falon v. Holly*, 480 F. App'x 325, 326 (5th Cir. 2012) (per curiam) (citing *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003)); *see, e.g.*, *Mitchell v. Cervantes*, 453 F. App'x 475, 477-78 (5th Cir. 2011) (per curiam).

But "the plaintiff's version of those disputed facts must also constitute a violation of clearly established law." *Joseph*, 981 F.3d at 330. So, "when qualified immunity is involved, at least in this circuit, a plaintiff has the additional burden to show that the violated right was 'clearly established' at the time of the alleged violation." *Id.* at 329 (footnote omitted).

And "[t]he 'clearly established' prong is difficult to satisfy." *Cunningham*, 983 F.3d at 191; *see also Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) ("We are bound by the restrictive analysis of 'clearly established' set forth in numerous [United States] Supreme Court precedents.").

The plaintiff "must show that the law was 'sufficiently clear' at that time 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" *Batyukova*, 994 F.3d at 726 (quoting *Mullenix*, 577 U.S. at 11). And "[t]here are two ways to demonstrate clearly established law" and meet this additional burden to make this second showing. *Id.*

The first approach "requires the plaintiff to 'identify a case' – usually, a 'body of relevant case law' – in which 'an officer acting under similar circumstances ... was held to have violated the [Constitution]," *Joseph*, 981 F.3d at at 330 (footnote omitted); *accord Wigginton v. Jones*, 964 F.3d 329, 335 (5th Cir. 2020) (A clearly established right must be supported by "'controlling authority – or a "robust

consensus of [cases of] persuasive authority" – that defines the contours of the right in question with a high degree of particularity."' (quoting *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011))); *see also Lincoln v. Turner*, 874 F.3d 833, 850 (5th Cir. 2017) ("While we may look to other circuits to find clearly established law, we must consider 'the overall weight' of such authority. A 'trend' alone is just that. As of December 2013, only two circuits had weighed in on the 'contours of the right.' These cases alone do not provide sufficient authority to find that the law was clearly established." (footnote omitted)).

"It is the plaintiff's burden to find a case in [her] favor that does not define the law at a 'high level of generality.'" *Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (cleaned up; quoting *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (quoting, in turn, *Cass v. City of Abilene*, 814 F.3d 721, 733 (5th Cir. 2016))). Thus, the "clearly established law" "must be 'particularized' to the facts of the case." *Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021) (cleaned up; quoting *White*, 137 S. Ct. at 552 (quoting, in turn, *al–Kidd*, 563 U.S. at 742)). And a clearly established right must be defined "'with specificity.'" *Cunningham*, 983 F.3d at 191 (quoting *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam)).

"This rule is a 'demanding standard.'" *Id.* (quoting *Wesby*, 138 S. Ct. at 589). And "'[a]bstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case.'" *Nerio*, 974 F.3d at 575 (quoting *Vincent v. City of Sulphur*,

805 F.3d 543, 547 (5th Cir. 2015)).

"While there need not be 'a case directly on point,' the unlawfulness of the challenged conduct must be 'beyond debate.'" *Joseph*, 981 F.3d at 330 (footnotes omitted); *accord Tucker*, 998 F.3d at 173-74 ("For conduct to be objectively unreasonable in light of clearly established law, there need not be a case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" (quoting *White*, 137 S. Ct. at 551 (internal quotation marks omitted); citing *Mullenix*, 577 U.S. at 14)).

"'The central concept is that of "fair warning": The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) (quoting *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013) (quoting, in turn, *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc))).

"In other words, 'there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful.'" *Cunningham*, 983 F.3d at 191 (quoting *Vincent*, 805 F.3d at 547).

Under the second approach to demonstrating clearly established law, a plaintiff asks the Court to look to "the 'rare' possibility that, in an 'obvious case,' analogous case law 'is not needed' because 'the unlawfulness of the [challenged] conduct is sufficiently clear even though existing precedent does not address similar

circumstances.'" *Joseph*, 981 F.3d at 330 (quoting *Wesby*, 138 S. Ct. at 590); *accord Batyukova*, 994 F.3d at 726. "[I]n an obvious case, general standards can [therefore] 'clearly establish' the answer, even without a body of relevant case law." *Roque*, 993 F.3d at 335 (cleaned up; quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). But "[t]he standard for obviousness is sky high." *Joseph*, 981 F.3d at 338. And "plaintiffs are only excused of their obligation to identify an analogous case in 'extreme circumstances' where the constitutional violation is 'obvious.'" *Cope*, 3 F.4th at 206 (quoting *Taylor v. Riojas*, 141 S. Ct. 52, 53-54 (2020) (per curiam)).

## Analysis

As to the Excessive Force Claim, Johnson alleges that he was "repeatedly tased by officers while on the ground and in handcuffs," which incident resulted in his teeth being broken. Dkt. No. 3 at 1. Johnson amended these allegations through verified responses to the Court's screening questionnaire. *See* Dkt. No. 11 at 4 ("I had two teeth broken when several officers slammed me on the ground. I was repeatedly tased while in handcuffs on the ground that has led to mental and emotional problems.... I was immediately aware of the pain. Paramedics on the scene removed the taser prongs in the back of a marked police cruiser, and later came to the Seagoville jail because of broken teeth."); *id.* at 6 ("I was slammed on the ground and physically assaulted by numerous officers resulting in broken teeth. I was repeatedly tased while in handcuffs on the ground while no threat of anything was possible."); *see also id.* at 5 (seeking $1 million in damages, an investigation, retraining, and that his teeth be repaired).

A claim "that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *accord Garza v. Briones*, 943 F.3d 740, 744 (5th Cir. 2019) ("Excessive-force claims are 'governed by the Fourth Amendment's "reasonableness" standard.'" (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014))).

To ultimately "prevail on a Section 1983 excessive force claim, 'a plaintiff must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Shepherd v. Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019) (quoting *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014) (quoting, in turn, *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008)); citing *Graham*, 490 U.S. at 393-97)); *accord Cloud*, 993 F.3d at 384 ("An officer violates the Fourth Amendment when an arrestee 'suffers an injury that results directly and only from a clearly excessive and objectively unreasonable use of force.'" (quoting *Joseph*, 981 F.3d at 332; citation omitted)).

As the United States Court of Appeals for the Fifth Circuit has explained,

> [e]xcessive-force claims are "necessarily fact-intensive," so we must "examine the totality of the circumstances to determine whether an officer's actions were objectively unreasonable." "The intent or motivation of the officer is irrelevant; the question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." We only consider the facts "knowable to the defendant officers" at the time the officers used force, and we must be "careful to avoid 'second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation.'"

*Roque*, 993 F.3d at 333 (footnotes omitted).

> *Graham* identifies several factors bearing on the reasonableness of force: with "careful attention to the facts and circumstances of each particular case," courts consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." We consider "not only the need for force, but also the relationship between the need and the amount of force used." Faced with an uncooperative arrestee, officers properly use "measured and ascending actions that correspond to [the arrestee's] escalating verbal and physical resistance."

*Cloud*, 993 F.3d at 384 (citations omitted).

Here, although Johnson's amended allegations are verified and this version of the disputed facts may therefore serve as competent summary judgment evidence, verified videos documenting the use of force are also in evidence. *See* Dkt. Nos. 51, 52. So, while the Court generally "must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor," *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citation omitted), here it must "assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene," *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (quoting *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011) (citing, in turn, *Scott*, 550 U.S. 372)). In sum, "[w]hen one party's description of the facts is discredited by the record, [a court] need not take his word for it but should view 'the facts in the light depicted by the videotape.'" *Id.* (quoting *Scott*, 550 U.S. at 380-81); *accord Joseph*, 981 F.3d at 325 (Where a court "proceed[s] through the facts in detail, including the disputed facts, considering each officer's actions independently," it "draw[s] these facts from the record, prioritizing the video evidence." (footnotes omitted)).

The undersigned has carefully reviewed the Officers' body cam videos. Neither supports Johnson's verified allegations that his face was injured (and thus his teeth were broken) when he was forced to the ground and that he "was repeatedly tased while in handcuffs [once] on the ground." Dkt. No. 11 at 4. And, focusing on the use of force that the videos depict, the videos are consistent with the Officers' version of events.

Johnson verbally refused Forrest's initial request that he exit the vehicle. Johnson was repeatedly asked to exit the vehicle and continued to argue with Forrest, refusing to step out of the car. After Forrest's and Keahey's requests became more forceful in tone, Johnson exited the car, clearly agitated. When asked if he had a weapon, he did not provide a clear answer and was asked to turn around for a pat down. Johnson put his hands up, appearing to resist and screaming at the officers. Keahey forced Johnson to the ground. Johnson continued to physically resist and refused Keahey's order to get on his stomach. At this point, Johnson was tased by Forrest. He then complied to get on his stomach with his hands behind his back so that he could be handcuffed. No force was used once he was compliant and in handcuffs.

In two recent cases involving the use of tasers, "[o]f the factors identified in *Graham*," the Fifth Circuit recognized "the extent of [the suspect's] resistance [as] the most important to analyzing [the officer's] use of his taser." *Cloud*, 993 F.3d at 384; *accord Betts v. Brennan*, ___ F.4th ____, No. 21-30101, 2022 WL 101316, at *3 (5th Cir. Jan. 11, 2022).

Our cases on police use of tasers have paid particular attention to whether officers faced active resistance when they resorted to a taser. Where … the severity of crime and immediate safety threat are relatively inconclusive, a suspect's active resistance to arrest may justify this degree of force. For example, we have held that two officers were reasonable to tase an arrestee because he had "aggressively evaded [their] attempts to apprehend him," and because they did so after the arrestee "continuously failed to comply," other "efforts to subdue [him] were ineffective," and the arrestee had "continued to resist handcuffing" and "kicked an officer after being taken to the ground." *Pratt v. Harris Cnty.*, 822 F.3d 174, 182 (5th Cir. 2016). In that case, we took as further evidence of "measured and ascending" action that "neither officer used [his] taser as the first method to gain [the arrestee's] compliance." *Ibid.*; *see also Buchanan v. Gulfport Police Dep't*, 530 F. App'x 307, 314 (5th Cir. 2013) ("[W]here a suspect resists arrest or fails to follow police orders, officers do not violate his right against excessive force by deploying their tasers to subdue him."). In another case – one not involving a taser but nonetheless relevant – we held that an officer reasonably pushed an arrestee onto the hood of a police cruiser, causing some bruises and chest pain, because the arrestee "resisted when [the officer] attempted to place handcuffs on him." *Collier v. Montgomery*, 569 F.3d 214, 219 (5th Cir. 2009). Specifically, the arrestee had "pulled his hand back and turned away from the officer," then grappled with him briefly. *Id.* at 216.

By contrast, we have found excessive force when officers tased someone offering only passive resistance or no resistance at all. For example, we held that officers could not tase someone who had not committed a crime, attempted flight, or disobeyed any commands, and who may have only provoked police with an "off-color joke." *Newman*, 703 F.3d at 762-63. Under those circumstances, police could not "immediately resort[ ] to taser and nightstick without attempting to use physical skill, negotiation, or even commands." *Id.* at 763. In another case, we found excessive force when an officer tased someone who did no more than pull his arm out of the officer's grasp, and who was not even suspected of a crime up to that point. *Ramirez*, 716 F.3d at 378; *see also Trammell*, 868 F.3d at 341-42 (arrestee pulling his arm away from officer's grasp did not alone justify two officers' tackling him to the ground). Likewise, we recently found excessive force when officers repeatedly beat and tased a man who "was not suspected of committing any crime, was in the fetal position, and was not actively resisting." *Joseph*, 981 F.3d at 336; *see also id.* at 335 ("If Joseph was not actively resisting, [officers] inflicted force beyond what the Fourth Amendment permits.").

*Cloud*, 993 F.3d at 384-85 (citations modified at footnote omitted); *see also Betts*, 2022

WL 101316, at *3 (observing that "the line between active and passive resistance is sometimes hazy and must be judged in light of the 'necessarily fact-intensive' nature of the inquiry" (quoting *Deville*, 567 F.3d at 167)).

Measured against this controlling authority, the facts in the light depicted by the videos do not show that either Forrest or Keahey violated Johnson's Fourth Amendment right to be free from the use of clearly excessive and objectively unreasonable force.

The videos depict that, to obtain Johnson's compliance, the Officers "did not "immediately resort[ ] to [the taser] ... without attempting to use physical skill, negotiation, or even commands."' *Betts*, 2022 WL 101316, at *4 (quoting *Newman*, 703 F.3d at 763). Instead, their escalating tactics "correspond[ed] to [Johnson's] escalating verbal and physical resistance."' *Id.* (quoting *Cloud*, 993 F.3d at 384 (quoting, in turn, *Joseph*, 981 F.3d at 332-33)); *see also Cloud*, 993 F.3d at 385-86 ("The record in this case shows that Cloud actively resisted arrest, which gave Luker reasonable grounds to tase him. While Cloud's left hand was being handcuffed, he turned partially around. Luker responded by commanding Cloud to turn back around. But when Luker reached for Cloud's right hand, Cloud turned to face him, with the handcuffs dangling from his left wrist. In other words, Cloud took a confrontational stance, deprived Luker of the use of his handcuffs, and thwarted efforts to complete the arrest. Up to then, Luker had addressed Cloud's general uncooperativeness and modest resistance with verbal commands and milder force. But at this juncture things took a more serious turn, making Luker's resort to his taser reasonable." (citation

omitted)).

And, as in *Betts*, Forrest

> tased [Johnson] only once. That was enough to subdue [him] and allow [Keahey] to handcuff him. At that point, additional force was not necessary and [Forrest] did not use any (although he did warn [Johnson] that further resistance would be met with another tase). This shows a reasonable "relationship between the need [for force] and the amount of force used."

*Betts*, 2022 WL 101316, at *4 (quoting *Joseph*, 981 F.3d at 332; citing *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 277 (5th Cir. 2015) ("[A]n exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased."); citation omitted).

In sum, because through the applicable record, Johnson has not shown that either officer's conduct violated a constitutional right, both are entitled to summary judgment on qualified immunity.

But Johnson also has not shown carried his burden as to qualified immunity's independent second prong. And the Officers are entitled to qualified immunity for this reason alone. *See, e.g.*, *Batyukova*, 994 F.3d at 722-26 ("An officer is entitled to qualified immunity if the officer's conduct either did not violate a federal right of the plaintiff or that right was not clearly established at the time of the relevant events. [A court] can base a decision to allow the immunity on either part of the analysis alone." (citations omitted)).

First, the record evidence viewed in the applicable light – with deference to the body cam videos – fails to show that this case presents "'extreme circumstances' where the constitutional violation is 'obvious.'" *Cope*, 3 F.4th at 206; *see, e.g.*, *Joseph*,

981 F.3d at 337-38 (setting out examples of extreme cases in which the Fifth Circuit found an obvious constitutional violation, such as "that it was obviously unconstitutional for an officer to shoot – without warning, despite an opportunity to warn – a suspect who was pointing a gun to his own head and did not know the officer was there").

And, because Johnson has not carried the admittedly "sky high" burden to show that analogous case law is not necessary, *Joseph*, 981 F.3d at 338, he may only rebut qualified immunity's second prong by identifying a case or body of relevant case law in which a public official under circumstances similar to those here was found to have violated the Constitution. But Johnson identifies no "[p]recedent involving similar facts," *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) – a requirement that "is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts," *id.* at 1152 (quoting *Mullenix*, 577 U.S. at 12); *see also Morrow*, 917 F.3d at 876 ("[O]vercoming qualified immunity is especially difficult in excessive-force cases. This 'is an area of the law "in which the result depends very much on the facts of each case," and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue.' … [E]xcessive-force claims often turn on 'split-second decisions' to use lethal force. That means the law must be so clearly established that – in the blink of an eye, in the middle of a high-speed chase – every reasonable officer would know it immediately." (citations

omitted)).

## Recommendation

The Court should grant Defendants Officer Justin Keahey and Officer Steven Forrest's motion for summary judgment on qualified immunity [Dkt. No. 49] and dismiss this case with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 20, 2022

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE